Jonathan A. Dessaules, State Bar No. 019439
**DESSAULES LAW GROUP**
5353 North 16th Street, Suite 110
Phoenix, Arizona 85016
Tel. 602.274.5400
Fax 602.274.5401
jdessaules@dessauleslaw.com

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Heather Sandoval and Debbie Miller, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Brown \| Olcott, PLLC, and Philip Brown,<br><br>Defendants. | No. 4:18-cv-00423-FRZ<br><br>**JOINT MOTION FOR APPROVAL OF SETTLEMENT AND ORDER DISMISSING CASE** |

## INTRODUCTION

Pursuant to Rule 41(a) of the Federal Rules of Civil Procedure, Plaintiffs Heather Sandoval ("Sandoval") and Debbie Miller ("Miller") and Defendants Brown | Olcott, PLLC, and Philip Brown (collectively, the "Parties") jointly move for an order approving the proposed settlement reached by the parties and memorialized in the settlement agreement, attached as Exhibit 1, pursuant to *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354-1355 (11th Cir. 1982). The Parties jointly agree and propose that the settlement represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.*

As discussed below, the settlement requires Defendants to pay Plaintiffs a substantial portion of the unpaid overtime wages they alleged were due and owing and an amount of liquidated damages in this action (the "FLSA Lawsuit"). The settlement also resolves a separate lawsuit that Defendants filed against Sandoval, *Brown Olcott v. Sandoval*, Case No. 4:18-cv-

00432423.1

00418-RM (the "DTSA Lawsuit"), alleging violations of the Defend Trade Secrets Act and the Stored Communications Act and various state law claims. The settlement further requires Defendants to reimburse Plaintiffs the attorneys' fees and costs they incurred in both lawsuits. Miller has also agreed to resign from her employment. Defendants request that the settlement be confidential unless otherwise ordered by the Court. The Parties shall address these terms in greater detail below.

## PROCEDURAL AND FACTUAL HISTORY

### A.   Factual Background

Defendants, a law firm and one of its members, are principally engaged in the collection of unpaid assessments and other charges owed to homeowners' and condominium associations. Defendants employed Plaintiffs as collectors for several years. Sandoval was terminated in May 2018. Miller is still employed by Brown | Olcott, but wishes to resign from her position as part of the settlement of this matter. Plaintiffs alleged that they each regularly worked in excess of fifty (50) hours per week.

Plaintiffs filed this FLSA Lawsuit as a putative collective action alleging Defendants improperly misclassified its collectors as exempt from the FLSA's overtime wage provisions and that they failed to pay overtime wages in accordance with the FLSA. Plaintiffs were paid a base salary plus set commissions tied directly to the attorneys' fees that they collected in the cases they handled. Plaintiffs sent an initial demand to Defendants in May 2018 and the Parties entered into a tolling agreement pending settlement discussions. Plaintiffs filed this action after those discussions faltered, asserting violations of 29 U.S.C. § 207(a)(1) for failing to pay time and one-half pay for non-exempt employees, failure to pay wages under A.R.S. § 23-355, and a claim for FLSA retaliation tied to Defendants' threat to file, and subsequent filing, of the DTSA Lawsuit against Sandoval in which Defendants alleged that Sandoval misappropriated trade secrets and improperly accessed a database in the process.

Plaintiffs filed a motion for certification of a collective action on October 12, 2018. Defendants opposed the motion and Plaintiffs filed a reply in support of the motion on November 2, 2018. Plaintiffs estimate there are roughly ten to twelve current and former employees who worked as collectors within the applicable time period. As Plaintiffs and other collectors worked from home, Plaintiffs obviously cannot attest to the number of hours each of them worked but believe that they worked a comparable number of hours.

### B. The Mediation and Settlement Agreement

The Parties participated in an all-day private mediation utilizing a private mediator, Amy Lieberman, that took place on November 16, 2018 and ultimately agreed to settle all of their individual claims, subject to court approval, in both Lawsuits. At the conclusion of the mediation, the Parties memorialized the terms of their conditional settlement in a Mediated Settlement Agreement, attached as Exhibit 2, that Ms. Lieberman drafted. The Parties subsequently entered into the more detailed Settlement Agreement that is attached as Exhibit 1.

The Settlement Agreement requires Defendants to pay Miller the sum of $█████ consisting of $█████ in wages, $█████ in liquidated damages, and $█████ in attorneys' fees and costs. Defendants will pay Sandoval the sum of $█████ consisting of $█████ in wages, $█████ in liquidated damages, and $█████ in attorneys' fees and costs. The remaining $█████ is to be held in an escrow account with Defendants' counsel to be paid to a forensic expert to confirm that Sandoval did not misuse Defendants' data in any way. The total amount of fees and costs, $█████, is less than the amount that Plaintiffs' counsel has actually incurred and also less than the amount Plaintiffs' counsel would be entitled to under their engagement agreement.

The Settlement Agreement further stipulates that Miller will resign her employment with Brown | Olcott, effective November 16, 2018, and that the firm would pay up to $█████ per month for a period of up to 12 months for her and her spouse's medical insurance costs. While the Parties recognize that this may not be a customary term of settlement, the Parties agreed it

was appropriate in this case as Miller was planning, regardless of settlement, in securing new employment anyway and the relationship between the Parties has been strained due to a variety of factors including matters unrelated to the claims pending in this case or the DTSA Lawsuit. As an example, Miller is Sandoval's mother and Miller was not happy with Sandoval's termination in May 2018 (the termination was unrelated to the FLSA claims) or the allegations in the DTSA Lawsuit.

The Parties also agreed to Defendants' request for confidentiality. Defendants are concerned that the publication of the terms of the settlement with Sandoval and Miller might cause friction with existing employees and complicate negotiations with same and, therefore, requested confidentiality so as not to unduly interrupt its business operations. Plaintiffs agreed to the request for confidentiality. The Parties agree, however, that it is up to the Court to decide whether to keep the settlement confidential and that confidentiality is not a condition precedent to the settlement.

Because Sandoval and Miller are settling their individual claims, the collective action count is moot. Each of the workers preserves their individual claims. In other words, those employees who have not reached an agreement with Defendants still have their claims.

## THE COURT SHOULD APPROVE THE SETTLEMENT

**I.   LEGAL STANDARD**

Courts generally do not rule on private settlement agreements negotiated between the parties. "If, however, a plaintiff brings an FLSA action, the parties must seek approval of the settlement agreement to ensure that it is enforceable and fair." *Fontes v. Drywood Plus, Inc.*, 2013 WL 6228652 at *5 (D. Ariz. Dec. 2, 2013). An employee's claims under the FLSA are nonwaivable. *Lynn's Food Stores*, 679 F.2d at 1352. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 n.8 (1946)).

> In reviewing a private FLSA settlement, the court's obligation is not to act as caretaker but as gatekeeper; it must ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such settlements do not undermine the Act's purposes. Thus, "[i]n reviewing the fairness of such settlement, a court must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute."

*Goudie v. Cable Communications, Inc.*, 2009 WL 88336 at *1 (D. Ore. Jan. 12, 2009) (court affirmed confidential settlement as a fair and reasonable compromise) (internal citations omitted).

Factors to consider include whether the settlement terms "are fair and reflect a reasonable compromise of Plaintiffs' FLSA claim," whether the amount to be paid "is a reasonable amount considering allegations of unpaid wages and overtime," whether the agreement is "the product of fraud or overreaching by, or collusion between the negotiating parties," and whether "the settlement, taken as a whole, is fair, reasonable, and adequate." *Id.* (citing *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). Generally, the Court's role is to determine whether the proposed settlement of FLSA claims is "a fair and reasonable resolution of a bona fide dispute" over the FLSA issues. *Demand v. Silverstein*, 2009 WL 10673485, at *1 (D. Ariz. Dec. 21, 2009) (citing *Lynn's Food Stores*, 679 F.2d at 1350-55)).

## II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

The Parties' settlement in this case reflects a negotiated, good faith compromise of disputed claims asserted by both sides that was facilitated in an all-day mediation conducted by a neutral and experienced mediator.

### A.   The Settlement Was a Good Faith Compromise of Disputed Claims.

As an initial matter, the settlement was reached in an arms-length negotiation presided over by a highly qualified mediator. *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 at *5 (N.D. Cal. Jan. 26, 2007) ("The settlement was negotiated and approved by experienced counsel on both sides of the litigation, with the assistance of a well-respected mediator with substantial experience in employment litigation [, and] this factor supports approval of the settlement").

Amy Lieberman is a mediator and arbitrator whose practice is limited principally to employment matters. *See* Exhibit 3. The Parties accepted the advice and recommendations of the mediator and agreed to the settlement based on her involvement, a factor that strongly supports approval of the settlement. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010).

This settlement was the product of extensive back-and-forth negotiations that started back in May 2018. Before the mediation, the Parties were approximately $██████ apart, with Plaintiffs demanding the total sum of $██████ and Defendants offering just $██████. *See* Exhibits 4 and 5. However, Plaintiffs had offered to settle for $██████ before filing the FLSA Lawsuit. *See* Exhibit 6. Thus, the $██████ settlement amount represents an increase of nearly three times Defendants' original offer and slightly more than fifty percent of Plaintiffs' pre-suit demand.[1]

The settlement also reflects a compromise in lieu of protracted and costly litigation of two separate cases where the outcomes in both cases are uncertain. *Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 526 (C. D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)). This is especially true with respect to Sandoval, who would be forced to incur tens of thousands of dollars in additional fees and costs defending the DTSA Lawsuit beyond the fees and costs she incurs pursuing the FLSA Lawsuit. As the Court may be aware, Defend Trade Secrets Act cases can be extremely costly and a defendant's right to recover fees, if successful, is not guaranteed. *See* 18 U.S.C. § 1836(b)(3)(D) (providing for attorneys' fees to defendant "if a claim of misappropriation is made in bad faith"). Although Sandoval also would have a claim for attorneys' fees if she successfully defended against Defendants' state law claims in the DTSA Lawsuit, such an award likely would still be subject

---

[1] This does not take into account additional monetary aspects of the settlement, including the payment of up to $██████ for Miller's medical insurance over the next twelve months and Miller's vacation pay, which Brown | Olcott is not otherwise obligated to pay.

to the Court's discretion under A.R.S. § 12-341.01. Even if Sandoval successfully prevailed on her overtime wage claim and was awarded substantial wages, liquidated damages, and attorneys' fees, any fees incurred defending the DTSA Lawsuit would substantially offset, and possibly exceed, any possible award.

Even without the DTSA Lawsuit, there was considerable reason to settle their FLSA claims at this juncture. Unless the trier of fact found a willful violation of the FLSA, Plaintiffs would only be entitled to go back two years for purposes of calculating unpaid overtime wages. 29 U.S.C. § 255. This is commonly a question of fact requiring a trial. *McGuire v. Hillsborough County, Florida*, 511 F. Supp. 1211, 1218 (M.D. Fla. 2007). Absent a finding of a willful violation, Miller's claim would be limited to just one year as she earned more than $ ▓ in 2017 and, therefore, met the highly compensated employee exception. This means she would only be entitled to unpaid overtime for the period of August 23, 2016 through December 31, 2016 (*i.e.*, two years before the commencement of the action). Even if a willful violation of the FLSA was found, Miller's claim would be limited to the eighteen-month period of August 23, 2015 through December 31, 2016.

### B. The Settlement Amounts are Reasonable in Light of the FLSA Allegations.

The FLSA claims turn largely on two legal issues: (i) whether Defendants improperly classified Plaintiffs as exempt, and (ii) the proper calculation of Plaintiffs' unpaid wages. Although Plaintiffs were confident that they were improperly classified as exempt, Plaintiffs recognize that obtaining a final ruling on this issue is not a foregone conclusion and could have been the subject of extensive litigation.

The second issue was the more difficult one to establish for a host of reasons. First, there is a dearth of records proving that Sandoval and Miller worked the hours they claim to work. While an employer has an obligation to maintain accurate time records, a plaintiff still has "the burden of proving that [she] performed work for which [she] was not properly compensated." *Brock v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986). This would involve producing "sufficient

evidence to show the amount and extent of that work *as a matter of just and reasonable inference*." *Tagupa v. VIPdesk, Inc.*, 125 F. Supp. 3d 1108, 1125 (D. Haw. 2015) (quoting *Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 687 (1946)).

There are a number of unknown factors in calculating Plaintiffs' overtime wages, including the number of hours each workweek the trier of fact will conclude each Plaintiff worked, the regular rate of pay to use, and whether overtime should be calculated under a half-time or time-and-a-half method. Defendants will contend that Plaintiffs' workweek fluctuated every week, and indeed every day, and that they did not exceed 40 hours each and every week. Under the circumstances, the settlement amounts for each plaintiff are well within the range of what a trier of fact ultimately might conclude is owed.

In general, the proposed settlement is a "fair and reasonable resolution of a bona fide dispute." It includes an amount of unpaid overtime, liquidated damages, and attorneys' fees. With respect to the latter, the fees sought are actually less than the fees that Plaintiffs' counsel would be entitled to under the terms of the engagement agreements. Plaintiffs' counsel agreed to accept this reduced amount in order to facilitate a settlement and ensure that the settlement was fair and reasonable for Plaintiffs. Plaintiffs have agreed to the settlement terms to resolve this matter rather than spend the next two years embroiled in contentious litigation.

### C.     Collective Action Allegations Do Not Preclude Settlement.

The Parties are not attempting to settle the claims of other workers or former workers and are strictly limiting the settlement to Sandoval's and Miller's individual claims. In a recent case, the Ninth Circuit affirmed that an FLSA "collective action" is not formed unless and until "they first file a written consent with the court expressly joining the litigation" because FLSA collective actions are "*strictly* opt-in actions." *Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106, 1109-1110 (9th Cir. 2018). In other words, the settlement of the named plaintiffs' claims prior to certification does not settle any of the putative collective action members' claims and there is no res judicata effect given to this settlement as to the other

workers. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018) ("A collective action is instituted when workers join a collective action complaint by filing opt-in forms with the district court"); *see also Smith v. T-Mobile USA Inc.*, 570 F.3d 1119, 1120 (9th Cir. 2009) ("A plaintiff seeking FLSA collective action certification does not have a procedural right to represent a class in the absence of any opt-in plaintiffs").

Here, there has not been any order certifying this case a collective action and no one has opted into the litigation. Each of the former and current employees who worked as collectors during the relevant class period maintain the same rights that they had before and during this litigation: they may file their own lawsuits, they may settle informally with Defendants, or they may do nothing. In a similar context, the United States Supreme Court has held that, collective action allegations become moot when the named plaintiff settles his or her claim before certification and "the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73 (2013). In the *Genesis Healthcare* case, the Supreme Court distinguished FLSA collective actions from Rule 23 class actions, noting that the former is "fundamentally different" from the latter. *Id.* at 74. Because the named plaintiff "had not yet moved for 'conditional certification' when her claim became moot" and the District Court had not ruled on any such request, the Supreme Court affirmed the dismissal of the complaint following a settlement.

Accordingly, the fact that Plaintiffs filed this case as a putative collective action and filed a motion seeking collective action certification is not a bar to settlement.

### D.     Plaintiffs' Attorneys' Fees and Costs are Reasonable.

Plaintiffs recognize that the amount of fees and costs to be paid out of the settlement may be relevant to the Court's decision and include this information for purposes of allowing the Court to assess the overall reasonableness of the settlement.

Plaintiffs' engagement agreements are attached as Exhibits 7 and 8. In the FLSA Lawsuit, Plaintiffs were jointly obligated to pay fees at the greater of either counsel's fees at their customary hourly rates or 40% of any recovery. *See* Exhibit 7. In addition, Sandoval was separately obligated to pay fees on an hourly basis in the DTSA Lawsuit. *See* Exhibit 8. Both engagement agreements obligated Plaintiffs to pay costs.

Costs in the FLSA Lawsuit were $_____ (consisting of the filing fee of $_____ in the FLSA Lawsuit and $_____ for the mediator's invoice). Plaintiffs also incurred $_____ in fees in the FLSA Lawsuit and an additional $_____ in the DTSA Lawsuit. As set forth in the Declaration of Jonathan Dessaules, attached as Exhibit 9, all of these fees were reasonable and necessary to successfully prosecute the FLSA Lawsuit and successfully defend the DTSA Lawsuit. These fees included analyzing the merits of both actions; preparing a pre-suit demand in the FLSA Lawsuit; researching and drafting the complaint in the FLSA Lawsuit; engaging in pre-suit negotiations; reviewing and analyzing more than 500 pages of material that Defendants provided as part of a pre-suit exchange of documents and information designed to facilitate an early settlement; review and analysis of claims in the DTSA Lawsuit; obtaining declarations regarding a defamation claim to rebut a defamation claim originally filed in the DTSA Lawsuit; preparing a motion to dismiss the federal claims; preparing an answer; preparing joint reports in both cases; preparing discovery requests in the FLSA Lawsuit; preparing a mediation statement; attending mediation; preparing this motion; working on the settlement agreement; and extensive communications with clients, opposing counsel, and third parties. A detailed breakdown of the work performed in each matter is attached as Exhibits A and B to Exhibit 9.

Despite incurring in excess of $_____ in attorneys' fees and costs in both actions that Plaintiffs' counsel would be entitled to under the two engagement agreements, Plaintiffs' counsel has agreed to reduce his attorneys' fees and costs by nearly 40%, capping both at $_____, in order to facilitate this settlement and ensure that the amounts to Plaintiffs, together with the fees and costs sought, are reasonable. This amount is substantially less than the

fees and costs that Plaintiffs' counsel has incurred and would be entitled to under the terms of the engagement agreement.

## **CONCLUSION**

The settlement of the FLSA and DTSA Lawsuits is the product of good faith negotiations between the Parties and provides substantial compensation to Plaintiffs for their claims and pays their legal fees. Accordingly, the parties request that the Court approve the settlement and dismiss the Parties' claims with prejudice.

DATED this ___ day of December 2018.

DESSAULES LAW GROUP

By:  /s/ Jonathan A. Dessaules
Jonathan A. Dessaules
*Attorney for Plaintiffs*

FAHANG & MEDCOFF

By:  /s/ Roberto C. Garcia
Timothy M. Medcoff
Roberto C. Garcia
*Attorney for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on December __, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Timothy M. Medcoff
Roberto C. Garcia
FAHANG & MEDCOFF
4801 E. Broadway Blvd., Ste. 311
Tucson, Arizona 85711
tmedcoff@fmlaw.law
rgarcia@fmlaw.law
*Attorney for Defendants*


  /s/ Hilary L. Narveson